[Cite as *DiGiorgio v. Cleveland*, 2011-Ohio-5878.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95945

---

# NICHOLAS DIGIORGIO, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# CITY OF CLEVELAND, ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
REVERSED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-700625

**BEFORE:**   Keough, J., Blackmon, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   November 10, 2011

**ATTORNEYS FOR APPELLANTS**

**For the city of Cleveland, Michael McGrath, James Gibian, Patrick J. McLain, and Michael A. Lawrence**

Barbara A. Langhenry
Interim Director of Law
Awatef Assad
William F. Gibson
Assistant Directors of Law
601 Lakeside Avenue
Room 106
Cleveland, OH 44114

**Also Listed**

**For Durraymus Gillis**

Peter G. Hilbert
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114

**For Dontez D. Hairston**

Irina Vinogradsky
Law Offices of Irina Vinogradsky
27600 Chagrin Boulevard
Woodmere, OH 44124

**For Davonte Johnson**

Ronald Robinson
1276 West Third Street
The Marion Building, Suite 424
Cleveland, OH 44113

**For Devonta McIntyre**

Bari E. Goggins
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1448

**ATTORNEYS FOR APPELLEES**

William B. Eadie
Rhonda Baker Debevec
Spangenberg Shibley & Liber LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Having determined in en banc proceedings that the trial court's order is a final, appealable order, this panel addresses the merits of the appeal. Defendants-appellants, the city of Cleveland (the "City"), Police Chief Michael McGrath, Sergeant James Gibian, Officer Patrick J. McLain, and Officer Michael A. Lawrence, appeal from the trial court's judgment denying their motion to dismiss and/or for judgment on the pleadings. For the reasons that follow, we reverse.

I

{¶ 2} On August 4, 2007, Virginia DiGiorgio was tragically struck and killed by a stolen car driven by defendant Dontez D. Hairston. Two years later, on August 4, 2009, plaintiffs-appellees, Joseph DiGiorgio, Virginia's widower, and Nicholas DiGiorgio, Virginia's son and administrator of her estate, filed suit. The complaint named as

defendants the City, as well as McGrath, Gibian, McLain, and Lawrence (the "municipal defendants"), in both their individual and official capacities.[1]

{¶ 3} Appellees alleged the following facts in paragraphs six through nine of their complaint:

{¶ 4} 6.   On August 4, 2007, Plaintiff Joseph DiGiorgio and Plaintiff[s'] decedent, Virginia DiGiorgio, were pedestrians crossing Prospect Avenue near its intersection with E. 14th Street, Cleveland, Ohio.

{¶ 5} 7.   Plaintiffs' decedent was struck by a stolen westbound automobile being operated by Defendant Driver and pursued by City of Cleveland Police Officers, Defendants McLain and Lawrence.

{¶ 6} 8.   The stolen vehicle was being operated by Defendant Dontez Hairston, with the joint and active participation of his passengers[,] defendants Durraymus Gillis, Davonte Johnson, and Devonta McIntyre.

{¶ 7} 9.   As a direct and proximate result of the collision described above, the Plaintiff[s'] decedent, Virginia DiGiorgio, sustained fatal injuries and Plaintiff Joseph DiGiorgio sustained serious permanent psychological injuries."

{¶ 8} Appellees' complaint then alleged the following causes of action against the municipal defendants:

{¶ 9} 1.   The first cause of action, directed against the City and Officers McLain

---

[1]The complaint also named as defendants Hairston, the driver of the stolen vehicle, and Durraymus Gillis, Davonte Johnson, and Devonta McIntyre, who were riding in the vehicle when it struck Virginia.   These defendants are not part of this appeal.

and Lawrence, alleged that the officers "acted recklessly, willfully and/or wantonly in their initiation, continuation, and the manner in which they conducted their high speed pursuit of the stolen vehicle under the circumstances. Alternatively, Defendant officers operated their patrol car negligently during a non-emergency call." Complaint at ¶12-13.

{¶ 10} 2. The second cause of action alleged that the City "recklessly, willfully and/or wantonly failed to provide appropriate and necessary training to its officers regarding pursuit of suspects" and that Chief McGrath "recklessly, willfully and/or wantonly failed to ensure that his Officers, Defendants McLain and Lawrence, were adequately trained on proper pursuit of suspects * * *." Id. at ¶17, 19.

{¶ 11} 3. The third cause of action alleged that Chief McGrath "recklessly, willfully and/or wantonly failed to ensure that his Officers, Defendants McLain and Lawrence, were adequately trained on proper pursuit of suspects * * *." Id. at ¶22.

{¶ 12} 4. The fourth cause of action alleged that the City and Chief McGrath "recklessly, willfully and/or wantonly failed to ensure that their Officers, Defendants McClain and Lawrence, were adequately supervised" and "recklessly, willfully and/or wantonly failed to ensure that an adequate and functioning communication system existed to facilitate the supervision required under Ohio law and to reasonably protect the public." Id. at ¶28-29.

{¶ 13} 5. The fifth cause of action alleged that the City, Chief McGrath, and Sergeant Gibian "directly participated and/or implicitly authorized, approved and/or knowingly acquiesced to the officers' conduct conducting the police chase in such a

manner that manifested a deliberate indifference to the Plaintiffs' safety" and that their "failure to discipline either Defendant McLain and/or Defendant Lawrence acted to ratify their conduct and is further evidence of a pre-existing policy and procedure permitting Officers to engage in such conduct." Id. at ¶33-34.

{¶ 14} 6. The eighth cause of action[2] alleged a survivorship claim based on any pain and suffering experienced by Virginia prior to her death. Id. at ¶45.

{¶ 15} 7. The ninth and tenth causes of action alleged negligent infliction of emotional distress and loss of consortium on behalf of Joseph DiGiorgio. Id. at ¶48, 50.

{¶ 16} The municipal defendants answered the complaint, denied liability, and subsequently filed a motion to dismiss and/or for judgment on the pleadings pursuant to Civ.R. 12(C) as to all claims against them. In their motion, appellants argued that the allegations against them were insufficient to support appellees' claims and that they were immune from liability under R.C. Chapter 2744. The trial court denied the motion without opinion and the municipal defendants now raise two assignments of error on appeal.

## II

### A. Immunity

{¶ 17} In their first assignment of error, the municipal defendants argue that the trial court erred in denying their motion for judgment on the pleadings regarding appellees'

---

[2]The sixth and seventh causes of action were directed against the driver of the automobile and the passengers and hence are not relevant to this appeal.

second, third, fourth, and fifth causes of action against the City and Chief McGrath and Sergeant Gibian in their official capacities because they are immune from liability under R.C. Chapter 2744, the Political Subdivision Tort Liability Act.

{¶ 18} Civ.R. 12(C) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted. *Whaley v. Franklin Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 574, 581, 752 N.E.2d 267.

{¶ 19} Although the standards for Civ.R. 12(B)(6) and (C) motions are similar, Civ.R. 12(C) motions are specifically for resolving questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 569, 1996-Ohio-459, 664 N.E.2d 931. In ruling on a Civ.R. 12(C) motion, the court is permitted to consider both the complaint and answer. Id. A court must construe as true all of the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. *Whaley*, supra, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113. Dismissal is appropriate where a court finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Pontious* at 570. Our review of the appropriateness of judgment on the pleadings is de novo. *Thornton v. Cleveland*, Cuyahoga App. No. 89902, 2008-Ohio-1709, ¶3.

{¶ 20} Determining whether a governmental entity is immune from tort liability

involves a three-step analysis. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶10. First, R.C. 2744.02(A)(1) sets forth the general blanket immunity applicable to political subdivisions. It provides that a political subdivision is generally not liable in a civil action for injury, death, or loss to person or property incurred while performing governmental or proprietary functions. To overcome this statutory immunity, a plaintiff must show that one of the five exceptions contained in R.C. 2744.02(B) applies. These exceptions are:

**{¶ 21}** 1. negligent operation of a motor vehicle;

**{¶ 22}** 2. negligent conduct of employees while carrying out a proprietary function;

**{¶ 23}** 3. a municipality's failure to keep roads and sidewalks free from nuisance;

**{¶ 24}** 4. injury or loss that occurs on or within buildings used for governmental functions and is caused by the negligence of the municipality's employees; and

**{¶ 25}** 5. any other situation in which liability is expressly imposed by the Revised Code.

**{¶ 26}** If a plaintiff demonstrates that one of the five enumerated exceptions to governmental immunity applies, a political subdivision may then assert one of the defenses set forth in R.C. 2744.03(A) to revive its immunity.

**{¶ 27}** This court has recognized that the provision of police services is a governmental function subject to statutory immunity. *Hall-Pearson v. S. Euclid* (Oct. 8, 1998), Cuyahoga App. No. 73429; *McCloud v. Nimmer* (1991), 72 Ohio App.3d 533, 538, 595 N.E.2d 492. Moreover, as relevant to this case, in *Hall-Pearson* this court

specifically found that "the training of police is a governmental function to which immunity attaches." Hence, under the three-step analysis set forth above, we must determine whether any of the exceptions to immunity apply to appellees' causes of action.

{¶ 28} It is apparent that none of the exceptions to immunity set forth in R.C. 2744.02(B) impose liability for the training of a police force (appellees' second and third causes of action), the supervision of a police force or the operation of its communication system (appellees' fourth cause of action), or the discipline of police officers (the fifth cause of action.) Hence, the municipal defendants are immune from liability regarding these causes of action and the trial court should have granted their motion for judgment on the pleadings with respect to these causes of action.

{¶ 29} Appellees' argument, relying on *Cater v. Cleveland*, 83 Ohio St.3d 24, 1998-Ohio-421, 697 N.E.2d 610, and *Robertson v. Roberts*, Trumbull App. No. 2003-T-0125, 2004-Ohio-7231, that the City and its employees can be liable for failure to train or supervise police officers is without merit. In *Cater*, the Ohio Supreme Court reiterated that determining whether a political subdivision is immune from liability involves the three-step analysis set forth above. Using this analysis, the *Cater* court determined on the facts of that case (a drowning at a municipal swimming pool) that former R.C. 2744.02(B)(3), which provided for political subdivision liability for injury, death, and loss caused by the subdivision's failure to keep public grounds free from nuisance, applied as an exception to the City's immunity under the second step of the analysis.

{¶ 30} The City then argued under the third step of the analysis that R.C. 2744.03(A)(5), which provides that a political subdivision is immune from liability if the injury resulted from the exercise of judgment or discretion in determining how to use equipment or personnel, unless the judgment or discretion was exercised with malicious purpose, revived its immunity. The Supreme Court held that because there was evidence that the City had acted in a wanton and willful manner by not training its employees at the pool on the use of 911 for emergencies, it was a jury question as to whether the City was entitled to the defense of R.C. 2744.03(A)(5).

{¶ 31} Of note, the Supreme Court did not hold in *Cater* that wanton, willful, or reckless failure to train employees is an independent cause of action to which the three-step immunity analysis does not apply. Thus, the Eleventh District misinterpreted *Cater* in *Robertson* when it considered an alleged failure to properly train police officers as an independent basis for liability in a suit against a political subdivision.[3] Furthermore, although R.C. 2935.031 imposes a statutory duty upon a political subdivision to adopt a pursuit policy, it cannot be used as an independent basis for imposing liability. See R.C. 2744.02(B)(5) ("Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision * * *.")

---

[3] In the proper case, a municipality's failure to train, supervise, or communicate with its police officers could be evidence that the municipality acted in a reckless or wanton manner, thereby depriving the municipality of any defense to immunity. See *Cater* at 617. Such evidence does not create independent causes of action regarding the training, supervision, or discipline of police officers, however.

{¶ 32} Because no exception to immunity applies to appellees' second, third, fourth, and fifth causes of action, the City is immune from liability. Likewise, Chief McGrath and Sergeant Gibian are statutorily immune on these claims as asserted against them in their official capacities. It is well settled that a suit against an employee of a political subdivision in the employee's official capacity is an action against the entity itself and the employees are entitled to the same immunity due the political subdivision. *Smitek v. Peaco* (Jan. 27, 1993), Lorain App. No. 92CA005359; *Duff v. Coshocton Cty.*, Coshocton App. No. 03-CA-019, 2004-Ohio-3713, ¶18, citing *Hafer v. Melo* (1991), 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301.

{¶ 33} Finally, because there is no exception to immunity for the training, supervision, or discipline of police officers, appellees' assertion that it should be allowed to amend its complaint is without merit because any amendment would be futile.

{¶ 34} Appellants' first assignment of error is sustained.

B.    Adequacy of the Complaint

{¶ 35} Appellees' first cause of action is premised on the exception to immunity set forth in R.C. 2744.02(B)(1), which states:

{¶ 36} "Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority." Under R.C. 2744.02(B)(1)(a), the City may establish a defense to liability for the negligent operation

of a motor vehicle by an employee if the vehicle was being operated by a police officer while "responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]"

{¶ 37} Even if a political subdivision is immune from liability, a municipality's employees may be held individually liable for their intentional torts upon a showing of malice or wanton or reckless behavior, or if the employees' actions were manifestly outside the scope of the employees' employment or official responsibilities. R.C. 2744.03(A)(6)(a) and (b); *Krokey v. Cleveland* (2001), 146 Ohio App.3d 179, 184, 765 N.E.2d 889.

{¶ 38} To preclude the City's immunity defense, in their first cause of action, appellees alleged that Officers McLain and Lawrence "acted recklessly, willfully and/or wantonly in their initiation, continuation and the manner in which they conducted their high speed pursuit of the stolen vehicle under the circumstances" and that the City was liable as a result of the officers' actions. In the alternative, appellees alleged that the officers "operated their patrol car negligently during a non-emergency call."

{¶ 39} With respect to Chief McGrath and Sergeant Gibian's individual liability, appellees' second, third, and fourth causes of action asserted that Chief McGrath acted "recklessly, willfully and/or wantonly" by failing to ensure that Officers McLain and Lawrence were adequately trained on the proper pursuit of suspects and adequately supervised, and that an adequate communication system existed. In their fifth cause of action, appellees alleged that Chief McGrath and Sergeant Gibian acquiesced to Officers

McLain and Lawrence's conduct regarding the chase and that their failure to subsequently discipline them evidenced a pre-existing policy that permitted such conduct.

{¶ 40} In their second assignment of error, the municipal defendants argue that appellees' attempts to evade the City's immunity and to impose individual liability on Chief McGrath and Sergeant Gibian by alleging reckless and wanton misconduct fails because the complaint does not allege sufficient facts to establish such conduct. Hence, they contend that the trial court should have granted their motion for judgment on the pleadings with respect to appellees' first cause of action, as well as the second, third, fourth, and fifth causes of action as asserted against Chief McGrath and Sergeant Gibian in their individual capacities. They further contend that the eighth, ninth, and tenth causes of actions fail as well.

{¶ 41} "While a complaint attacked by a * * * motion to dismiss does not need detailed factual allegations, the [plaintiffs'] obligation to provide the grounds for their entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Parsons*, supra at ¶11, citing *Bell Atlantic Corp. v. Twombly* (2007), 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. Conclusory statements in a complaint that are not supported by facts are not afforded the presumption of veracity and are insufficient to withstand a motion to dismiss. Id.; *Vagas v. Hudson*, Summit App. No. 24713, 2009-Ohio-6794, ¶13, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 193, 532 N.E.2d 753. "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations" to survive a motion to dismiss. *Ashcroft v. Iqbal* (2009), 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868.

{¶ 42} Here, appellees' complaint alleges willful and wanton misconduct but does not allege sufficient facts to support that conclusion. The factual allegations of the complaint allege only that as she was crossing Prospect Avenue with her husband, Virginia DiGiorgio was struck and killed by someone driving a stolen car that was being pursued by the police. These "circumstances" do not demonstrate willful and wanton misconduct by the police. The fact that an individual was struck and killed by a stolen vehicle being chased by the police is not sufficient, by itself, to demonstrate willful and wanton misconduct. Appellees' allegation that the officers' high speed chase was willful and wanton "under the circumstances" is merely a conclusory statement about the officers' conduct that is designed to evade the City's immunity, but is not supported by sufficient factual allegations. As the municipal defendants argue in their brief, "[appellees'] complaint only parrots an exception to immunity without suggesting facts to support that legal conclusion."

{¶ 43} We are not persuaded by appellees' argument that their factual allegations sufficiently alleged willful and wanton misconduct because the complaint alleged that the officers engaged in a high-speed pursuit of "a 13-year-old in the city's theater district." The complaint never mentions Hairston's age, or even that the driver of the stolen car was a juvenile, and it makes no mention that the DiGiorgios were in the "theater district."

Accordingly, the first cause of action should have been dismissed.

{¶ 44} Appellees' allegation in paragraph seven that the officers "operated their patrol car negligently during a non-emergency call" does not save its first cause of action from dismissal. R.C. 2744.02(B)(1) imposes liability on a municipality for the negligent "operation" of a motor vehicle by its employees. But appellees' complaint contains no factual allegations as to how the officers were allegedly negligent in operating their vehicle. For example, there are no allegations to indicate that the officers failed to activate a siren or emergency signals or any factual allegations regarding how the officers were handling their vehicle.

{¶ 45} Because the scant factual allegations of appellees' complaint are insufficient to allege any exception to immunity regarding the officers' operation of their motor vehicle, the City is immune from liability, and the trial court should have granted the motion to dismiss with respect to the first cause of action. Because the City is immune from liability, Count 8, the survivorship claim relating to any pain and suffering experienced by Virginia DiGiorgio before she died, necessarily fails, and the trial court should have also dismissed that count.

{¶ 46} Appellees' second, third, and fourth causes of action assert that Chief McGrath acted "recklessly, willfully and/or wantonly" by failing to ensure that Officers McLain and Lawrence were adequately trained on the proper pursuit of suspects and adequately supervised, and that an adequate communication system existed. In their fifth cause of action, appellees allege that Chief McGrath and Sergeant Gibian acquiesced to

Officer McLain and Lawrence's conduct regarding the chase and that their failure to subsequently discipline them evidenced a pre-existing policy that permitted such misconduct.

{¶ 47} But appellees' assertions of reckless, willful, and/or wanton misconduct by Chief McGrath are unsupported by any factual allegations whatsoever in the complaint. Specifically, the complaint contains no facts regarding what training Chief McGrath did or did not provide to Officers McLain and Lawrence and, in fact, there is not a single factual allegation in the complaint concerning anything prior to August 4, 2007. Nor is there any allegation that Chief McGrath had a statutorily-imposed duty to provide such training. In short, the complaint is devoid of any factual allegations that would support appellees' conclusion that Chief McGrath recklessly failed to ensure that the officers' training was adequate.

{¶ 48} Likewise, the complaint contains no factual allegations to support appellees' conclusion that Chief McGrath recklessly failed to supervise Officers McLain and Lawrence on August 4, 2007. Further, there are no factual allegations in the complaint that the communication system used by the police on August 4, 2007 was inadequate or not functioning (in fact, the complaint makes no mention of the communication system at all other than in the fourth cause of action) and, hence, no factual allegations to support appellees' conclusion that Chief McGrath recklessly failed to ensure there was an adequate and functioning communication system. Similarly, there are no factual allegations in the complaint relating to Chief McGrath and Sergeant Gibian's alleged authorization or

approval of Officer McLain and Lawrence's conduct on August 4, 2007 during the chase nor any factual allegations demonstrating that the officers were not disciplined after the chase.

{¶ 49} Civ.R. 8(A) requires a complaint to contain "a short and plain statement" of operative facts demonstrating "that the party is entitled to relief[.]" "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'" *Ashcroft*, supra at 1949, quoting *Bell Atlantic Corp.*, supra at 557.[4]

{¶ 50} Here, even under the broad notice-pleading requirements of Civ.R. 8, it is apparent that, as with Count 1, appellees' assertions of reckless and/or willful and wanton conduct in Counts 2 through 5 of the complaint are merely "naked assertions" unsupported by any factual allegations. Appellees' assertions merely allege an exception to immunity, without any factual allegations demonstrating reckless or willful and wanton behavior by Chief McGrath or Sergeant Gibian. Hence, they are insufficient to withstand a motion to dismiss.

---

[4]Although *Ashcroft* and *Twombly* refer to Fed.R. 8(A) and Ohio Civ.R. 8(A) is applicable here, the pleading requirements under both rules are virtually identical. *Vagas*, supra at fn.1. Additionally, the Ohio rule was based on the federal rule. Id., citing the 1979 staff notes to Civ.R. 8.

{¶ 51} Counts 9 and 10 likewise fail. Count 9, a loss of consortium claim on behalf of Joseph DiGiorgio, is a derivative claim that can only be maintained if the primary cause of action is proven. *Turk v. Novacare Rehab. of Ohio*, Cuyahoga App. No. 94635, 2010-Ohio-6477, ¶39. A derivative claim fails when a primary claim fails. Id. Because the complaint did not set forth sufficient factual allegations to support an exception to immunity, the City is immune with respect to the officers' operation of their motor vehicle, and therefore this derivative claim also fails.

{¶ 52} The City is likewise immune with respect to Count 10, which alleged negligent infliction of emotional distress. No such claim falls within one of the five exceptions to the City's immunity under R.C. 2744.02(B). Furthermore, with respect to the individual defendants' liability on this claim, under R.C. 2744.03(A)(6), a governmental employee is immune from liability unless the employee's acts were committed in a wanton or reckless manner or outside the scope of employment. Because the complaint failed to set forth sufficient facts to support any exception to immunity, this count should have likewise been dismissed.

{¶ 53} Appellants' second assignment of error is sustained.

Judgment reversed.

It is ordered that appellees pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR